UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08-CR-0270 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER |
| TIMOTHY PAUL MCCARTHY (3), | |
| Defendant. | |

Michael L. Cheever, UNITED STATES ATTORNEY'S OFFICE, and Michael J. Romano, UNITED STATES DEPARTMENT OF JUSTICE — TAX DIVISION, for plaintiff.

Timothy Paul McCarthy, defendant pro se. (Paul Applebaum, APPLEBAUM LAW OFFICE, standby counsel.)

Defendant Timothy McCarthy was one of several individuals who ran a business that helped clients cheat on their taxes. A jury convicted McCarthy, along with codefendants Douglas Leiter and Brian Scott, of conspiracy under 18 U.S.C. § 371. McCarthy was also convicted of two counts of aiding or assisting in the preparation or presentation of a false tax return under 26 U.S.C. § 7206(2). Two other defendants, Christopher Robinson and Laurie Brausen (formerly Strohbeen), pleaded guilty to conspiracy before trial. The sixth defendant, Mark Maxwell, was a fugitive at the time of trial. After eluding capture for a year, Maxwell was apprehended, tried, and convicted of conspiracy, as well as two counts of aiding or assisting in the preparation or presentation of a false tax return.

This matter is before the Court on McCarthy's objection to the amount of the tax loss set forth in the Presentence Investigation Report ("PSR"). According to the PSR, McCarthy is

responsible for a tax loss of at least $3,243,893. The Court held an evidentiary hearing on February 26, 2010 to address McCarthy's objection. Having considered the entire record — including the transcript of the trial and all of the exhibits introduced by the government at trial and at the evidentiary hearing — the Court finds, by a preponderance of the evidence, that the amount of the tax loss is more than $1 million but not more than $2.5 million, which corresponds to a base offense level of 22 under U.S.S.G. § 2T4.1.[1]

*A. Background*

As established by the government at trial, the defendants helped their clients to cheat on taxes through three different tax-evasion schemes: (1) the "trust scheme," under which the defendants prepared and advised returns falsely claiming that individual taxpayers were trusts and fraudulently deducting some or all of those taxpayers' incomes as "fiduciary fees"; (2) the "claim-of-right scheme," under which the defendants prepared and advised returns that fraudulently deducted some or all of the taxpayers' incomes as claim-of-right deductions[2]; and (3) the "LLC scheme," under which a taxpayer would report his income through an LLC set up by the defendants and purportedly owned by two (or more) nonprofit clubs. The income of the taxpayer was fraudulently attributed to the LLC, and the income of the LLC was fraudulently attributed to the nonprofit clubs — which, because they were "nonprofit," would not pay taxes or

---

[1] The Court cites to the 2008 version of the Guidelines, which is the version that was used to prepare McCarthy's PSR, and the version addressed by the parties in their filings. At the evidentiary hearing, the Court asked whether the 2009 version has changed in any way relevant to this case. Neither side identified any relevant changes.

[2] A legitimate claim-of-right deduction is permitted in certain circumstances when an individual is required to return money that he reported as income (and paid taxes on) in a prior year. *See* 26 U.S.C. § 1341.

even file returns. What they would do, however, is pay the rent, groceries, and other personal expenses of the taxpayer. Thus the taxpayer (who controlled the clubs) would be able to use his income as his own without paying any taxes on it.

*B. Analysis*

Because McCarthy was convicted both of conspiracy and of the substantive offense of aiding or assisting in the preparation or presentation of a false tax return, there are two guidelines that apply in his case: § 2T1.9 (conspiracy to impede, impair, obstruct, or defeat tax) and § 2T1.4 (aiding, assisting, procuring, counseling, or advising tax fraud). For purposes of determining the base offense level, however, § 2T1.9 incorporates § 2T1.4. Section 2T1.4, in turn, incorporates the definition of "tax loss" from § 2T1.1 and the base offense level from the Tax Table corresponding to the tax loss.

The government's calculation of tax loss is summarized in three exhibits: Exhibit 512 (trust scheme), Exhibit 513 (claim-of-right scheme), and Exhibit 514 (LLC scheme).[3] In Exhibits 512 and 513, the government has calculated a loss amount for each false trust or claim-of-right return that (according to the government) was prepared or advised by one of the defendants or one of their unindicted coconspirators. In Exhibit 514, the government has calculated tax losses attributable to taxpayers who purchased the fraudulent LLC package. The total amount of loss claimed on these three exhibits is $3,282,482.

At the Court's request, the government prepared a comprehensive memorandum detailing the evidence that connects each return to the conspiracy. In that helpful memorandum — for

---

[3]Except where otherwise noted, all citations to exhibits are to the government's exhibits admitted at the December 2008 trial of McCarthy, Leiter, and Scott.

which the Court expresses its appreciation — the government declined to present evidence with respect to eleven of the taxpayers listed on Exhibit 512. *See* Docket No. 266 at 49-50. Excluding the losses associated with those eleven taxpayers, the government's claimed tax loss is $2,964,200. *See* Appendix A (table of losses associated with the eleven excluded taxpayers, which total $318,282).

McCarthy has not objected to the method by which the government calculated the amount of loss that it attributes to each taxpayer. Instead, McCarthy objects that the losses attributable to some of those taxpayers should not be counted against him because the government has failed to prove that either McCarthy or one of the other conspirators prepared or advised the preparation of those taxpayers' returns. McCarthy also objects that the government has double-counted certain losses by including multiple returns filed by individual taxpayers in a single tax year. *See, e.g.*, Ex. 513 at 1 (including a tax loss of $31,230 for each of the two 1999 tax returns filed by Michael Fischer). Finally, McCarthy objects to the inclusion of any losses attributable to the LLC scheme.

At the evidentiary hearing, the Court and the parties went through the government's memorandum, taxpayer-by-taxpayer, to identify the returns to which McCarthy is objecting and the basis for his objection. The Court ruled on a number of McCarthy's objections from the bench; those rulings may be found in the transcript of the hearing. The losses attributable to the returns to which McCarthy is *not* objecting, as well as to the returns with respect to which McCarthy's objections were overruled at the hearing, total $1,020,173. *See* Appendix B (table of returns included in the loss calculation at the hearing; the shaded returns are those included by the Court over McCarthy's objection).

In addition to these losses, the Court will also include the losses attributable to the LLC scheme. McCarthy contends that these losses should not be included because, in his view, the LLC scheme was not illegal. According to McCarthy, the LLCs' tax returns accurately reported the disposition of income from the LLCs and most of the nonprofit LLC members had been told by the IRS that they were not required to file tax returns. McCarthy also contends that J.V. Springman, the individual who prepared tax returns for many of the LLCs, was not a member of the conspiracy.

McCarthy's argument is refuted by the evidence introduced at trial, which amply demonstrated that the defendants openly and intentionally packaged and sold the LLC scheme as a sham that was designed to conceal taxable income from the IRS. The scheme functioned by enabling a taxpayer to fraudulently attribute his income to an LLC and then to two nonprofit clubs when, in fact, the taxpayer treated his income as his own at all times. *See, e.g.*, Trial Tr. 614-21 [hereinafter "TT __"].[4]

As for Springman, the evidence introduced at trial established by a preponderance of the evidence that Springman was a member of the conspiracy. *See, e.g.*, TT 472-74, 560, 778, 786-89, Ex. 516. Moreover, even if the government had failed to prove that Springman was a member of the conspiracy, that fact would be irrelevant. After selling the LLC package to a client, the defendants would often refer the client to Springman to prepare the necessary tax returns. *See, e.g.*, TT 623. In other words, Springman merely took care of some of the paperwork necessary to *implement* a fraudulent scheme that the defendants — including McCarthy personally, *see* TT 545-46 — had already packaged and sold.

---

[4] All transcript citations are to the December 2008 trial of McCarthy, Leiter, and Scott.

The resulting (or intended) tax loss is clearly the "amount of loss that was the object of the offense" that the defendants committed by conspiring to sell the fraudulent LLC scheme. *See* § 2T1.1(c)(1); *see also* § 2T1.4(a) (incorporating the definition of "tax loss" as found in § 2T1.1). McCarthy's objection to the inclusion of losses attributable to the LLC scheme is therefore overruled.

Adding the $334,025 in tax losses associated with the LLC scheme to the $1,020,173 already admitted by McCarthy or included by the Court at the evidentiary hearing yields a tax loss of $1,354,198 — well over $1 million. McCarthy's base offense level is thus 22 unless the government can prove additional losses that would bring the total above $2.5 million. *See* § 2T4.1.

A substantial portion of the remaining tax losses cited by the government are attributable to a group of returns — identified in Appendix C — that are connected to the conspiracy only circumstantially. Of course, the government is free to use circumstantial evidence to connect a tax return to the conspiracy, but the circumstantial evidence must be strong enough to connect the return to the conspiracy by a preponderance of the evidence. After considering the government's evidence, the Court cannot find, by a preponderance of the evidence, that the returns identified in Appendix C were prepared or advised by McCarthy or one of his coconspirators.

Generally speaking, the government relies on the following evidence to establish that one of the defendants (or one of their unindicted coconspirators) prepared or advised these returns: (1) evidence that a taxpayer filed a false return that was similar to a false return prepared or advised by one of the defendants and (2) evidence of some connection between that taxpayer and

one of the defendants (such as a payment from the taxpayer to a defendant or a tax-related document related to the taxpayer that was found in a defendant's possession). The government argues that when a taxpayer who had some connection with a conspirator filed a false return similar to a false return prepared or advised by a conspirator, the Court should find it more likely than not that a conspirator prepared or advised the taxpayer's false return.

Although it is a close call, the Court is not persuaded by the government's argument. As the Court explained at the evidentiary hearing, the evidence in this case indicates that the defendants are part of a nebulous community of like-minded people who cling to strange notions about the tax laws and who share with each other various strategies for evading taxes. For that reason, the fact that an individual who had some kind of connection with one or more of the defendants filed a false tax return — even a return similar to returns that are indisputably connected to the defendants — is not quite enough to prove, by a preponderance of the evidence, that one of the defendants prepared or advised that false return.

For example, with respect to a number of the taxpayers identified in Appendix C, the government points to the fact that the taxpayers' returns included a distinctive attachment referring to a "white citizen" right that was also attached to tax returns for which McCarthy admits responsibility. *See, e.g.*, Ex. 108. But as the government candidly brought to the Court's attention — and as the Court learned by reading the opinions of other courts — very similar tax-protestor language has been used in returns filed by taxpayers who are not in any way connected to the defendants in this case. *See* Sentencing Ex. 17 (referring to a "white citizen" right); *see also Pugh v. Commissioner*, 97 T.C.M. (CCH) 1791 at *1 (2009) (describing a claim-of-right return referring to a "white citizen" right). In the Internet age, the invention of a new strategy for

cheating on taxes does not remain secret for long. Thus, the use of the same or similar tax-protestor language on a given return — while certainly relevant — does not establish by a preponderance of the evidence that one of the conspirators filed or advised that return.

Evidence of a connection between the taxpayer and one of the conspirators — such as the appearance of the taxpayer's name on a customer list, or possession by a conspirator of a tax-related document related to the taxpayer — pushes the evidence close to, but not over, the preponderance-of-the-evidence threshold. The evidence at trial established that the defendants earned money through activities that did not directly relate to helping clients cheat on their taxes. Moreover, the evidence at trial established that Leiter was regarded by many tax protestors as an expert on the tax code, and thus it would not be surprising if some of them turned to him after getting in hot water with the government because of fraudulent tax returns that they prepared on their own. And finally, as noted, various defendants were involved to various degrees in various anti-government activities in Minnesota. One would expect to find connections between the defendants and other Minnesotans who filed fraudulent tax returns.

For these reasons, the Court sustains McCarthy's objection with respect to the returns identified in Appendix C. The tax loss claimed for these excluded returns totals $716,860. Subtracting this amount from the government's claimed loss of $2,964,200 yields a loss of $2,247,340 — less than $2.5 million.

At this point, the Court has concluded that the government has proven a tax loss in excess of $1 million. The Court has also concluded that the government has not proven a tax loss in

excess of $2.5 million.[5] McCarthy raises objections to returns not discussed in this order, but the Court need not address those objections. Sustaining all of those objections (and excluding all of those returns) would not drive the amount of loss below $1 million, just as overruling all of those objections (and including all of those returns) would not drive the amount of loss over $2.5 million.

The Sentencing Guidelines do not require this Court to calculate the amount of loss with precision. Rather, "the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1, application note 1. The Court has reasonably estimated the tax loss caused by McCarthy and his coconspirators to be more than $1 million but less than $2.5 million, and, based on that finding, the Court determines that McCarthy's base offense level is 22. *See* § 2T4.1.

ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Timothy McCarthy's objection to the inclusion of tax losses claimed on Government's Exhibit 514 is OVERRULED.

2. Defendant Timothy McCarthy's objection to the inclusion of tax losses listed in Appendix C attached to this opinion is SUSTAINED.

---

[5]The government has argued that, for various reasons, its claimed tax loss is actually understated. But without a principled basis for even a ballpark estimate of the untallied tax losses, the Court would be indulging in speculation to conclude that the loss exceeds $2.5 million. The Court cannot sentence McCarthy on the basis of speculation.

3. The Court finds, by a preponderance of the evidence, that the total tax loss attributable to defendant Timothy McCarthy is at least $1,354,198 (but not over $2.5 million), which yields an offense level of 22.

Dated: March 9, 2010
s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge